UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK ALAN SOURANDER,

          Plaintiff,                       No. 18-11162

v.                                  District Judge Gershwin A. Drain
                                    Magistrate Judge R. Steven Whalen

SHERIFF HOWARD HANFT,
ET AL.,

          Defendants.

_____ /

## REPORT AND RECOMMENDATION

On March 23, 2018, Plaintiff Patrick Alan Sourander, a prison inmate in the custody of the Michigan Department of Corrections, filed a *pro se* civil complaint in the Ogemaw County, Michigan Circuit Court, under 42 U.S.C. § 1983, based on events alleged to have occurred while he was a pretrial detainee in the Ogemaw County, Michigan Jail. Defendants removed the case to this Court on April 12, 2018. Before the Court is Defendants' Motion to Dismiss and/or for Summary Judgment [Doc. #31],which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that Plaintiff's claims regarding improper handling of his legal mail be DISMISSED WITH PREJUDICE.

-1-

I further recommend that Plaintiff's complaint be DISMISSED WITHOUT PREJUDICE  under 42 U.S.C. § 1997e(a) as to all other claims, for failure to exhaust administrative remedies.

## I.   FACTS

On April 18, 2018, following removal to this Court, Defendants filed a Motion for More Definite Statement [Doc. #2], which I granted on June 25, 2018 [Doc. #8], ordering that Plaintiff file a more definite statement within 30 days. Plaintiff filed his 17-page, handwritten More Definite Statement on September 12, 2018 [Doc. #14].[1]  Plaintiff asserts claims under the First and Fourth Amendments flowing out of the alleged seizure and misdirection of his mail, including legal research material sent by a non-lawyer and co-defendant in his criminal case, as well as various magazines; claims under the Fourth Amendment and his constitutional "right of privacy" based on meetings with his criminal defense attorney taking place in a "non-soundproof room" at the jail; and a claim under the Due Process Clause based on his placement in "an isolated intake cell," allegedly without a hearing.  *More Definite Statement* [Doc. #14],  ¶¶ 105-123.

In terms of the exhaustion of administrative remedies issue, Plaintiff states:

"Besides being a de facto lack of administrative remedies at Ogemaw County Jail, upon information and belief, as a pre-trial detainee Plaintiff

---

[1] Defendants moved to dismiss the case under Fed.R.Civ.P. 41(b), based on Plaintiff's untimely filing of his More Definite Statement [Doc. #12]. On November 16, 2018, the Court accepted my recommendation to deny the motion to dismiss [Doc. #26, adopting Report and Recommendation in Doc. #24].

was not obligated to pursue administrative remedies. Either way Plaintiff attempted to file 2 grievances after explaining to correctional officers what a grievance was, Plaintiff's request went unanswered." *Id*. ¶ 10.

Defendants have submitted the following exhibits with their Reply Brief [Doc. #52] relevant to the exhaustion issue.

Defendants' Exhibit 1 is Plaintiff's kite to Defendant Purtill acknowledging the latter's informal response to Plaintiff's grievance regarding his mail. Exhibit 2 is a kite to Purtill, dated January 14, 2015, again acknowledging Putrill's response to the mail issue, and stating, "Well on a positive note I've already asked for just about everything I can think of so there shouldn't be any more of that. LOL."

Defendants' Exhibit 3 is a blank copy of the printed grievance form provided to Jail inmates.

Defendants' Exhibit 4 is a copy of the Rules and Regulations of the County Jail, applicable at the time Plaintiff was incarcerated there. The general rules require inmates to read the Facility Rules and Regulations, and to attend an orientation session on the Rules. Pg. ID 729. The section on prisoner grievances, Pg. ID 735 states:

### Inmate Grievances (Kites)

Inmates shall use the cobra kiosk to send a kite. Kites can be sent to the classification officer, kitchen, Nurse, Program Coordinator, Corrections Sergeant or the Jail Administrator. A grievance form can be obtained from a C/O. Once filled out it shall be forwarded directly to the Sgt. Then maybe to the Jail Administrator.

Exhibit 9 is the affidavit of Defendant Brian Osier, who was a Sergeant and

Assistant Jail Administrator at the time Plaintiff was a Jail inmate.  He states that Plaintiff was provided with a copy of the Jail's Rules and Regulations on November 17, 2014.  In addition, a copy of the Rules and Regulations were posted on the walls of the inmate pods in the jail. *Osier Affidavit*, ¶ 4.  He states that if a prisoner was not satisfied with the grievance response, he could submit an appeal on the same grievance form, and this would be forwarded to the Jail Administrator.  *Id*. ¶ 5.  Osier states that he is unaware of Sheriff Hanft being involved in any grievance procedure involving the Plaintiff.  *Id*. ¶ 6.  Part of Osier's job was to maintain all prisoner grievances, and he states that Plaintiff filed only two grievances, one on December 4, 2014, requesting expedited mail handling and complaining that he had not received a package from a third party (not an attorney) that contained "thousands of pages" of downloaded material; and another on December 5, 2014, regarding a punishment he received for passing a note to another prisoner.  *Id*. ¶¶ 8-9.  Osier states that Defendant Purtill, the Jail Administrator, responded to both grievances, and that Plaintiff did not appeal either.  *Id*. ¶¶ 10-11.  Osier further states that the kiosk system allows prisoners to send kites to a number of jail officials, but not to Sheriff Hanft. *Id*. ¶ 14.

Exhibit 10 is the affidavit of Ogemaw County Sheriff Howard Hanft.  He states that he is not involved in the prisoner grievance procedure unless a prisoner takes an appeal beyond the Jail Administrator.  *Hanft Affidavit*, ¶ 4.  He states that he never received any grievances of any correspondence from the Plaintiff.  *Id*. ¶¶ 5-6.

-4-

Exhibit 16 is the affidavit of Daniel Purtill, the Jail Administrator at the time of the events in question.  As Jail Administrator, he maintained all prisoner grievances, and states that Plaintiff filed only two grievances, one on December 4, 2014 and one on December 5, 2014.  Both were responded to, and neither was appealed.  *Purtill Affidavit*, ¶¶ 13-15.

Exhibit 20 is Plaintiff's December 4, 2014 grievance regarding the delay in receiving his mail.[2]  He states that he expects to receive "hundreds probably even thousands of pages of downloaded legal material" being sent by "an individual."

Attached to Plaintiff's response [Doc. #48] as Exhibit 2 is his own Declaration in Support of Opposition.  He states that after turning in his two grievances, they both went unanswered. *Plaintiff's Declaration*, ¶ 3.  He states that he had never seen "an actual grievance policy," including the policy regarding filing kites through the kiosk system. *Id*. ¶ 4.  He further states that he sent kites to Defendant Purtill "many times" through the cobra kiosk system, and also "tried to handwrite kites."  *Id*. ¶ 11.  He states that he handwrote, on a blank sheet of paper, at least six complaints, titled "prisoner grievance," and gave them to unknown correctional officers to deliver to Sheriff Hanft. He states that he never received a response. *Id*. ¶ 15.

---

[2] Defendants also submitted this as Exhibit 8 to their motion to dismiss and/or for summary judgment [Doc. #31].

## II.   STANDARD OF REVIEW

### A.   Exhausiton

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 2387,165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90, 126 S.Ct. at 2385.   Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*,  549 U.S. 199, 216 (2007). Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight*, 532 F.3d 567 (6th Cir.2008)*.  Jones v. Bock* overruled a long line of Sixth Circuit

cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

Under the PLRA, a dismissal for failure to exhaust nonjudicial remedies is without prejudice. *Boyd v. Corrections Corp. of America,* 380 F.3d 989, 994 (6th Cir.2006) (citing *Knuckles El v. Toombs,* 215 F.3d 640 (6th Cir.2000)); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D.Mich. 2011).

In *Jones v. Bock,* 549 U.S. at 214, the Supreme Court suggested in dicta that failure to exhaust might be a basis for dismissal under Rule 12(b)(6).  However, in *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted.  *See also Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (concluding that failure to state a claim as used in § 1997e(c) and § 1915(g) does not include failure to exhaust administrative remedies).  In *Melton v. Michigan Corrections Commission*, 2009 WL 722688 (E.D. Mich. 2009), the Court granted a motion for summary judgment, dismissing the complaint without prejudice for failure to exhaust. In the present case, the Defendant has framed his request as a motion for summary judgment, and I will address it as such.

### B.    Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary

judgment, the non-moving party must show sufficient evidence to create a genuine issue

of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6ᵗʰ Cir. 1990).

Drawing all reasonable inferences in favor of the non-moving party, the Court must

determine "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  When the "record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party," there is no genuine issue of material fact, and summary

judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6ᵗʰ Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the

record which demonstrate the absence of a genuine dispute over material facts, the

opposing party may not then "rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact," but must make an affirmative evidentiary showing to

defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6ᵗʰ Cir. 1989).

The non-moving party must identify specific facts in affidavits, depositions or other

factual material showing "evidence on which the jury could *reasonably* find for the

plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added).  If the non-moving party cannot

meet that burden, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

I must first address a misstatement of law made by the Defendants with regard to

the exhaustion issue.  Citing *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998), the

Defendants assert that "the prisoner has the burden of demonstration that he has

exhausted his administrative remedies."  This is incorrect.  In *Jones v. Bock*, 549 U.S. at

216, the Supreme Court overruled *Brown* and other Sixth Circuit cases, holding "that

failure to exhaust is an affirmative defense under the PLRA, and that inmates are not

required to specially plead or demonstrate exhaustion in their complaints."  It is therefore

these Defendants' burden to show non-exhaustion.

Defendants also argue that the Plaintiff's More Definite Statement contains an

admission that he did not exhaust his administrative remedies, and that Plaintiff is bound

by that admission.  Plaintiff's statement, found at Doc. #14, Pg. ID 1 67, reads, "[U]pon

information and belief, as a pre-trial detainee Plaintiff was not obligated to pursue

administrative remedies."  Based on the Plaintiff's statement, the Defendants contend,

"There is no way around it: Plaintiff has admitted that he failed to exhaust his

administrative remedies, as required by 42 U.S.C. § 1997e."  *Defendants' Motion*, Doc.

#31, Pg. ID 339.  But there is a way around it.  The sentence following the Plaintiff's

statement reads, "Either way Plaintiff attempted to file 2 grievances after explaining to

correctional officers what a grievance was, Plaintiff's request went unanswered." Plaintiff's claim that he was not required to exhaust his administrative remedies is posited in the alternative to his claim that he in fact attempted to pursue two grievances. The Federal Rules explicitly permit a plaintiff to plead both alternative and inconsistent claims. *See* Fed.R.Civ.P. 8(d)(2) and (3).[3]

Nevertheless, the Plaintiff errs in arguing that the PLRA's exhaustion requirement does not apply to him because he is no longer an inmate of the Ogemaw County Jail. He contends that his transfer to the Michigan Department of Corrections rendered administrative remedies at the Jail "unavailable." 42 U.S.C. § 1997e(a) mandates exhaustion of "available" administrative remedies:

> "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." (Emphasis added).

In *Cox v. Mayer*, 332 F.3d 422, 424 (6th Cir. 2003), the Sixth Circuit, noting that the text of the statute "is straightforward and unmistakable, and not prone to ambiguity," held as follows:

---

[3] The concept of inconsistent claims and defenses, and their utility, is not new. Sigmund Freud, in Interpretation of Dreams, relates the story of a man who is accused by his neighbor of borrowing a pot and then returning it in a broken condition. In his defense, the man argues alternatively that he did not borrow the pot, that the pot was not damaged when he returned it, and that the pot was broken when he borrowed it. Freud notes that although the arguments are inconsistent, if even one is true the man must be found not guilty. Likewise, Rule 8(d)(2) states, "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

"A natural reading of the statute suggests that its application requires consideration of three simple questions. First, is plaintiff 'a prisoner confined in [a] jail, prison, or other correctional facility?' If not, the statute is inapplicable. If so, a second question must be considered: Is the plaintiff suing under § 1983 respecting 'prison conditions?' If not, the statute is inapplicable. If so, a third question must be considered: Did plaintiff exhaust 'such administrative remedies as [were] available' before plaintiff 'brought' his action? If question three is answered in the negative, plaintiff is in violation of the statute and the court is required to dismiss plaintiff's suit."

In *Cox*, the plaintiff was a prisoner at the time he filed his suit, but was released at the time the district court considered the defendant's motion to dismiss. Under those facts, the Court found that all three questions were answered affirmatively, and that the plaintiff was bound by the exhaustion requirement.

Likewise in the present case, Plaintiff was a prisoner when he filed his lawsuit, albeit in the custody of the MDOC rather than the Ogemaw County Jail. The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Indeed, the Plaintiff concedes that at the time he filed his complaint, he was "technically a prisoner." *Plaintiff's Response* [Doc. #48], Pg. ID 620. By contrast, the plaintiff in *Mabry v. Freeman*, 489 F.Supp.2d 782, 785 (E.D.Mich.2007), on which this Plaintiff relies, had been released from prison and was not incarcerated in any facility when he filed his complaint.

Although he concedes that he was "technically a prisoner," Plaintiff argues that the

grievance procedure at the Ogemaw County Jail was unavailable to him because he had been transferred to the MDOC. In support he cites *Bradley v. Washington*, 441 F. Supp. 2d 97, 102 (D.D.C. 2006). In *Bradley*, the plaintiff brought § 1983 claims based on three incidents that occurred on June 30, July 31, and August 8, 2005, respectively. On August 8, he was transferred to a different institution. The Court held that as to the July 31st incident, which occurred about a week before the plaintiff's transfer, and the August 8th incident, which occurred on the very day of his transfer, the institutional grievance procedure was not reasonably available to him, given the constricted time frame. However, the Court did not similarly excuse the plaintiff's failure to exhaust the June 30th incident, because he had the time and opportunity to pursue a grievance before his August 8th transfer:

> "Bradley argues that he was similarly not required to "pursue further administrative remedies" with regard to the June 30 incident because of his transfer to federal custody. (Pl.'s Opp'n at 7.) Bradley failed, however, to timely initiate administrative proceedings addressing that claim while housed at the District's Central Detention Facility. (See supra Section II.) His later transfer does nothing to relieve him of this failure." *Id*. 441 F. Supp. 2d at 103, fn 6.

The *Bradley* Court in fact affirmed the dismissal of the June 30th claim based on plaintiff's failure to exhaust.

To relieve prisoners from their duty to exhaust available administrative remedies because they are later transferred to a different facility would de-incentivize them from complying with the dictates of the PLRA. In the case of a pretrial detainee in a county

jail, the prisoner could simply wait until he or she is either acquitted, given probation, or sentenced to an MDOC facility in an effort to avoid the exhaustion requirement. The Sixth Circuit made the point in *Cox*, 332 F.3d at 426:

> "Viewed differently, the problem is one of incentive: though dismissal without prejudice may well be judicially uneconomical in the instant case, to excuse plaintiff's duty to exhaust in every instance would encourage all prisoners nearing completion of their sentences to eschew the grievance process in favor of the courts. Such prisoners would know that, no longer confined at the time the courts addressed their case, their failure to exhaust could be excused."

Plaintiff Sourander's claims fall within fn. 6 of *Bradley*: he had the opportunity to complete the Jail's grievance procedure before he was transferred, but he did not.

In short, Plaintiff meets all three requirements of *Cox*. He was a prisoner at the time he filed his complaint; he is suing under § 1983 based on prison conditions; and, as will be explained below, he did not exhaust available institutional remedies.

Plaintiff also argues that even apart from his transfer, the Ogemaw County Jail did not have a grievance procedure that was available to him.

Ogemaw County clearly has a grievance procedure, set forth in the Rules and Regulations of the County Jail. *See* Exhibit 4 to Defendants' Reply Brief. Defendants Osier and Purtill both state in their affidavits that Plaintiff was provided with a copy of the Rules and Regulations, which are also posted in the prisoner pods. Plaintiff actually used the grievance form, at least at the first stage of the process, as shown in Exhibit 8 to Defendants' Motion to Dismiss and Exhibit 20 to their Reply Brief. The question, then, is

not whether a grievance process existed, but whether it was reasonably "available" to the Plaintiff.

In *Ross v. Blake*, 136 S.Ct. 1850 (2016), the Supreme Court reaffirmed the principle that under the PLRA, exhaustion is mandatory and that there is no "special circumstances" exception to the exhaustion requirement. *Id*. at 1858. However, the Court went on to discuss the single textual exception to exhaustion contained in the PLRA–that an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Id*. Noting that circumstances where an administrative remedy is unavailable "will not often arise," *Ross* delineated "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id*. at 1859.

First, an administrative remedy will be deemed unavailable where prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. The Court offered the following example:

> "Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office–but in practice that office disclaims the capacity to consider those petitions. the procedure is not then 'capable of use' for the pertinent purpose." *Id*.

Secondly, a remedy is not available if the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. In other words, "when a remedy is...essentially 'unknowable'–so that no ordinary prisoner can

-14-

make sense of what it demands–then it is also unavailable." *Id.*

Third, a remedy will be deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Once a defendant carries the burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy, "the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014), citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."). *See also Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him.....").

As to the first *Ross* factor, there is no showing that the Ogemaw County Jail or any of the Defendants consistently disregards or claims the incapacity to deal with grievances. The communications between Plaintiff and Defendant Purtill (Defendants' Exhibit 1 and 2), and the affidavits of Purtill and Osier show otherwise.

As to the second factor, there is nothing opaque or "unknowable" about the

grievance policy, which is set forth in the Rules and Regulations (Defendants' Exhibit 2). The grievance form itself (including the one that Plaintiff submitted, *see* Defendants' Exhibit 20) contains information regarding an appeal. With one exception, discussed below, the procedure is straightforward and easy to understand.

Finally, with the exception of his grievance regarding his mail, Plaintiff has not carried his burden of showing that Jail officials thwarted his effort to file grievances. In both his More Definite Statement [Doc. #14] and his response to the Defendants' motion [Doc. #48], he concedes that he filed two grievances.  Only one of those grievances even arguably pertains to his receipt of mail. As to his other claims, Plaintiff did not file any grievances at all.  Although he asserts that he sent a number of communications to Sheriff Hanft through the kiosk system, that does not comply with the Jail's grievance procedure as set forth in the Rules and Regulations, which provides for submission to the Sergeant or the Jail Administrator, not the Sheriff.

However, one of Plaintiff's grievances complains of a general delay in receiving his mail, including his expectation of receiving a large volume of legal material. It complains of delay, but does explicitly  address the issue of inspection of incoming material for contraband.  Regarding this grievance, I find that the Jail's policy regarding the appeal of grievances is somewhat unclear, and that there is at least an issue of fact as to whether Plaintiff received a written response to his grievance.  First, the Rules and Regulations provide that a prisoner's grievance is to be forwarded to the "Sgt. Then

-16-

maybe to the Jail Administrator." Maybe to the Jail Administrator? When? After the Sergeant denies the grievance? Or in the first instance? The Rules do not explicitly mention anything about an appeal. There is a question of fact as to whether the procedure regarding appeals was improperly "opaque." *Ross v. Blake*.

And while the grievance form itself contains a section for an appeal to the "Sheriff or Designee" (maybe the Jail Administrator?), the grievance that Plaintiff submitted, *See* Defendants' Exhibit 8 to their motion and Exhibit 20 to their Reply brief, does not show a written response in the space provided. This supports Plaintiff's claim that he did not receive at least a *formal* response to his grievance, i.e., he did not receive back the grievance form submitted with Defendants' Exhibits, a form that contained a space for a written appeal. In this regard, there is evidence that Plaintiff was thwarted in his ability to pursue an appeal of this particular grievance . *See Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004), quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir.2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable[.]").

Therefore, under *Ross v. Blake*, Plaintiff may be excused from the exhaustion requirement regarding the issue of incoming legal mail, and that claim may be addressed on the merits. in the first instance.

Unfortunately for Plaintiff, his claim regarding legal mail has no merit, and

-17-

Defendants are entitled to summary judgment on this claim.  The incoming mail of which

he complains, which he says included hundreds or thousands of pages of legal material,

was sent not by an attorney, but by his non-attorney co-defendant in the criminal case.

The trial judge in the criminal case pointed this out to the Plaintiff.  *See* Exhibit 9 to

Defendants' motion [Doc. #31], transcript of hearing in Ogemaw County Circuit Court.

This was not legal mail that had to be opened in Plaintiff's presence, and, like all

incoming mail, could properly be opened and inspected for contraband pursuant to policy.

*See Parrish v. Johnson*, 800 F.2d 600, 603 (6th Cir.1986) ("In order to maintain prison

security and to check for contraband, prison officials may, pursuant to a uniform and

evenly-applied policy, open an inmate's incoming mail.").

## IV.    CONCLUSION

I recommend that Defendants' Motion for Summary Judgment [Doc. #31] be

GRANTED, and that Plaintiff's claims regarding improper handling of his legal mail be

DISMISSED WITH PREJUDICE.

I further recommend that Plaintiff's complaint be DISMISSED WITHOUT

PREJUDICE  under 42 U.S.C. § 1997e(a) as to all other claims, for failure to exhaust

administrative remedies.

Any objections to this  Report and Recommendation must be filed  within fourteen

(14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D.

Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further

right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

*Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638

F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise

others with specificity will not preserve all the objections a party might have to this

Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.

1987).

Within fourteen (14) days of service of any objecting party's timely filed

objections, the opposing party may file a response. The response shall be not more than

twenty (20) pages in length unless by motion and order such page limit is extended by the

court. The response shall address specifically, and in the same order raised, each issue

contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 7, 2019

## CERTIFICATE OF SERVICE

I hereby certify on August 7, 2019, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on August 7, 2019.